UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ELIZABETH VINCOY, mother and
next friend of Vernon R. Vincoy, a
minor; and VERNON GLADDEN,
Joint Conservator and next friend for
and on behalf of Vernon R. Vincoy,
an incapacitated minor,

        Plaintiffs,

vs.                                                                                                       CIV 97-296 JC/LFG-ACE

UNITED STATES OF AMERICA and
SAN JUAN REGIONAL MEDICAL
CENTER, dba San Juan Ambulance Services,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER came on for consideration of Plaintiffs' Motion in Limine to Exclude the Opinions of Defendants' Expert on Life Expectancy *(Doc. 85)*, filed November 6, 1998; Defendant San Juan Regional Medical Center's Motion for Separate Trial of Issues of Liability and Damages *(Doc. 87)*, filed November 9, 1998; and Defendant United States of America's Motion for Trial Without a Jury *(Doc. 76)*, filed September 23, 1998. The Court has reviewed the motions, the memoranda and exhibits submitted by the parties, and the relevant authorities. The Court finds that Plaintiffs' Motion in Limine and Defendant's Motion for Separate Trial are not well taken and will be denied. Defendant's Motion for Trial Without a Jury is well taken and will be granted.

**I. Background**

This case arises from the allegedly negligent medical treatment of Vernon R. Vincoy ("V.R.") by employees of Presbyterian Medical Center ("PMC") in Farmington, New Mexico when he was

nineteen months old. Plaintiffs amended their complaint to add San Juan Regional Medical Center ("San Juan") as a defendant for allegedly failing to transport the toddler by ambulance at the San Juan Regional Medical Center in a timely manner. Plaintiff brought the suit against the United States of America pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) & 2672 , and the Federally Supported Health Centers Assistance Act of 1992, 42 U.S.C. § 233 (g)-(k). The parties agree that the United States is liable for the acts, errors, and omissions of the employees and agents of PMC. The parties also agree that V.R. suffers from severe and permanent brain damage. He is unable to feed himself, sit upright, or even roll over by himself.

## II. Motion to Exclude Opinions of Defendants' Expert on Life Expectancy

Defendants wish to introduce opinion testimony from Stanley Handmaker, M.D., on V.R.'s life expectancy. Defendants submit that Dr. Handmaker is a pediatrician who has worked at the University of New Mexico's Medically Fragile Children's Program and has more than twenty years of experience working with medically fragile children. Dr. Handmaker personally examined V.R. and reviewed the child's records. Dr. Handmaker consulted Dr. David Strauss, a researcher who recently published a comprehensive statistical study on the life expectancy of children with cerebral palsy. Dr. Strauss informed Handmaker that he had developed a computer model that could provide an estimate of life expectancy based on observations of the child and Dr. Strauss' database of more than 12,000 young children. Based on information provided by Dr. Handmaker, Dr. Strauss' computer model provided an estimated life expectancy of 16.5 years. Dr. Handmaker estimates V.R.'s life expectancy as between 16.5 and 26 years based in part on his communications with Dr. Strauss and Strauss' computer model.

Plaintiffs seek to exclude Dr. Handmaker's opinion testimony on life expectancy on the grounds that it is nothing more than inadmissible hearsay, based solely on Dr. Strauss' computer analysis. Plaintiffs claim that Dr. Strauss' computer model does not fall within the type of "facts or data . . . reasonably relied upon by experts in the particular field in forming opinions or inferences" as contemplated in FED. R. EVID. 703. I disagree.

Expert testimony is admissible "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue" and the witness testifying is "qualified as an expert by knowledge, skill, experience, training, or education." FED. R. EVID. 702. The first part of this test is met because V.R.'s life expectancy is relevant to the issue of damages for his future care. The second part of this test is satisfied as well because Dr. Handmaker's education and experience as a pediatrician working with medically fragile children qualifies him as an expert on this subject.[1]

Expert opinions based on otherwise inadmissible hearsay must also satisfy the requirement of Rule 703 that the facts or data must be "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993) (quoting FED. R. EVID. 703). Dr. Handmaker states that his opinion on life expectancy is based on his examination of V.R., V.R.'s records, Dr. Handmaker's experience with other medically fragile children, a review of the scientific literature, and a computer

---

[1] I find no merit to Plaintiffs' two challenges to Dr. Handmaker's qualifications as an expert. Whether or not Dr. Handmaker was discharged from his administrative position at University of New Mexico Hospital for financial mismanagement is irrelevant to his qualifications as an expert on medically sensitive children. Second, Defendants present evidence that Dr. Handmaker's experience over the past twenty years includes research, teaching, and clinical supervision in addition to his administrative responsibilities.

analysis of Dr. Strauss' data. I am convinced that Dr. Strauss' data satisfies this test. Dr. Strauss' study on life expectancy was published in a peer-reviewed medical journal and was based on a statistical analysis of the records of more than 12,000 children compiled over a fifteen-year period. Certainly, Dr. Strauss' medical journal article is the type of data reasonably relied upon by experts in the field. The fact that Strauss used a computer program as a tool to assist Dr. Handmaker in analyzing the data from Strauss' database should not make the data any less reliable. Dr. Handmaker's Affidavit (Ex. C to Def.'s Resp.) *(Doc. 91)* provides sufficient evidence that information obtained from the consultation with Strauss is the type of data reasonably relied upon by experts in this field.

### III. Motion for Separate Trials on Liability and Damages

Defendant San Juan Regional Medical Center moves for separate trials of the issues of liability and damages. Defendant cites the risk of unfair prejudice and judicial economy as reasons for separate trials.

Separate trial of issues "is not to be routinely ordered." *See* FED. R. CIV. P. 42 (Advisory Comm. Notes to 1966 Amendment). Separate trials may be ordered "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." FED. R. CIV. P. 42. In deciding whether to exercise my discretion to bifurcate the trial, I need to weigh a number of factors, including the risk of unfair prejudice from having a single trial, judicial economy, possible inconvenience to the parties, delays from having two trials, and complication of the trial process.

I am not convinced that separate trials will reduce the risk of unfair prejudice to the Defendants. Certainly V.R.'s condition is tragic, and testimony about a severely brain damaged four-

year-old child will be "heart-wrenching." But the jury will hear much of this testimony in the liability phase of a bifurcated trial because the medical condition of the child before he was hospitalized, the nature of the medical treatment, and the causation of the child's injuries would be at issue in that phase. *Cf. Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957 (10th Cir. 1993) (causation and damages tried together and separately from other questions of liability); *In re Bendectin Litigation*, 857 F.2d 290, 308 (6th Cir. 1988) (proximate causation tried separately from damages and other issues of liability). Further, I am not convinced that the issues are as easily separable in this case as they were in *Bendectin* (strict product liability for a drug alleged to cause birth defects) or *Angelo* (asbestos litigation). The *Bendectin* and *Angelo* plaintiffs could show causation through the extensive studies on asbestos and Bendectin without as detailed an inquiry into the extent of the plaintiffs' injuries. In contrast, the liability issue here requires a thorough consideration of V.R.'s condition before, during, and after the allegedly negligent treatment. Therefore, the jury will be exposed to the child's tragic condition.

I am not persuaded that judicial economy favors separate trials. Judicial economy favors separate trials where litigation is likely to be complex and an interlocutory appeal on a preliminary issue is anticipated. The annotations to Rule 42 note that the rule allowing separate trials originated in admiralty law, where there was a statutory right to interlocutory appeals. *See* FED. R. CIV. P. 42 (Advisory Comm. Notes to 1966 Amendment). The cases cited by Defendant San Juan Regional Medical Center where separate trials were permitted almost universally involved complex litigation that could be simplified by separate trials. *See, e.g., Angelo*, 11 F.3d 957 (liability trials of some or all of the nine defendant asbestos manufacturers as to which manufacturer produced the asbestos alleged to cause plaintiff's injuries could be avoided depending on the verdict in causation phase);

*In re Repetitive Stress Injury Litigation*, 11 F.3d 368 (2d Cir. 1993) (consolidation of more than forty cases against numerous electronic manufacturers); *In re Bendectin*, 857 F.2d 290. In contrast to these highly complex cases, this case appears to be a relatively straightforward medical malpractice case. I do not see any significant savings of judicial resources by conducting two separate trials. To the contrary, I agree with Plaintiff that separate trials will cause delay and inconvenience to the parties and witnesses. Many of the witnesses will have to testify in both trials and travel time will be increased for out of town witnesses and the parties. Because Defendant San Juan Regional Medical Center has not met its burden to show that separate trials will reduce the risk of unfair prejudice or promote efficiency and economy, I shall deny this motion.

## IV. Motion for Trial Without a Jury

All parties agree that the claims under the Federal Tort Claims Act must be tried by the court. *See* 28 U.S.C. § 2402. The only question is whether I should exercise my discretion to use the assistance of an advisory jury in deciding the liability of the United States in this case. An advisory jury does not lessen my responsibility for deciding the Federal Tort Claims Act issues. I conclude that an advisory jury would not assist me in discharging that responsibility. *See Wright v. United States*, 80 F.R.D. 478, 479-80 (D. Mont. 1978).

Wherefore,

**IT IS ORDERED** that Defendant San Juan Regional Medical Center's Motion for Separate Trial *(Doc. 87)* is **denied.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion in Limine to Exclude Opinions of Expert on Life Expectancy *(Doc. 85)* is **denied**.

**IT IS FINALLY ORDERED** that Defendant United States of America's Motion for Trial Without a Jury *(Doc. 76)* is **granted**. The Federal Tort Claims Act action shall be tried without an advisory jury.

DATED December 28, 1998.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

Counsel for Plaintiffs : James A. Branch, Jr.
                              Joseph J. Branney
                              Albuquerque, NM

Counsel for Defendant       Raymond Hamilton, AUSA
United States of America:    Albuquerque, NM

Counsel for Defendant       W.R. Logan
San Juan RMC:                Civerolo, Gralow & Hill
                              Albuquerque, NM